Michael D. Harris (Calif. Bar. No. 59,470)
Email: mharris@socalip.com
Steven C. Sereboff (Cal. Bar No. 156,731)
Email: ssereboff@socalip.com
**SOCAL IP LAW GROUP LLP**
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362
Phone: (805) 230-1350 x246 • Fax: (805) 230-1355

Attorneys for Plaintiff White Cap Construction Supply, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| White Cap Construction Supply, Inc., <br>    Plaintiff, <br> v. <br> The Domain Name *oceanographical.com*, in rem, TierraNet, Inc., Domain Name Registrar <br>    Defendant. | Case No. 07cv2064 WQH (CAB) <br> Memorandum of Points and Authorities in Support of Motion to Enter Default Judgment by the Court [FED. R. CIV. P. 55(b)(2)] <br> Date: Monday, August 4, 2008 <br> Time: 11:00 a.m. <br> No Oral Argument Unless Requested by the Court |

A.   Relief Requested ............................................................................................................ 2

B.   Support for Motion ........................................................................................................ 2

C.   White Cap's Rights ........................................................................................................ 2

D.   Argument ....................................................................................................................... 5

  1.   In Rem Jurisdiction is Proper ................................................................................. 5

  2.   The Court has the Power to Order TierraNet to Transfer the *whitecap.com* Domain Name to White Cap ................................................................................... 6

  3.   The Statute Authorizes the Domain Name Transfer Based on *oceanographical.com*'s Acts and White Cap's Rights ............................................ 6

E.   Conclusion ..................................................................................................................... 8

Memorandum of Points and Authorities in Support of Motion for Default Judgment

1

A. **RELIEF REQUESTED**

Plaintiff White Cap Construction Supply, Inc. (White Cap) seeks a default judgment ordering the transfer by Internet domain name register TierraNet, Inc. of the domain name *whitecap.com* to plaintiff pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), a section of the Lanham Trademark Act. Exhibit A contains a copy of the statute. White Cap seeks no monetary award, attorney fees or costs.

B. **SUPPORT FOR MOTION**

By its default, TierraNet is deemed to have admitted the well-pleaded averments of the complaint, except those as to the amount of damages. *See* FED. R. CIV. P. 8(b)(6). Accordingly, TierraNet has admitted the following facts except those augmented with other evidence.

White Cap does not assert wrongdoing by TierraNet. It is merely a domain name registrar of a cybersquatter.

C. **WHITE CAP'S RIGHTS**

Plaintiff White Cap, a Delaware corporation, owns the United States trademark registrations that are the subject matter of this lawsuit. Compl. ¶¶ 3, 4. White Cap's predecessor in interest founded a store named White Cap Construction Supply in 1976 to provide quality tools and services for the professional contractor community. Today, White Cap operates over 150 "WHITE CAP" stores throughout the United States. See Compl. ¶ 11.[1]

For more than 30 years, White Cap and its predecessors have built a strong reputation of being a leader in providing quality products and quality services to the professional contractor community. Compl. ¶ 12. Since May 25, 1984, White Cap and its predecessors in interest continuously used the trademark WHITE CAP in interstate commerce for "retail store and distributorship services in the field of construction tools, equipment and materials" ("the Services"). White Cap owns United States Trademark Registration No.

---

[1] "White Cap" in normal letters refers to plaintiff. "WHITE CAP" in small, upper case letters refers to White Cap's trademarks. Italicized *whitecap.com* refers to the domain name.

Memorandum of Points and Authorities in Support of Motion for Default Judgment

2

1,478,065 ('065 Registration) in International Class 42 for the trademark WHITE CAP for the Services (Exhibit B). Registration No. 1,478,065 is incontestable within the meaning of 15 U.S.C. § 1065. Compl. ¶¶ 13, 14.

White Cap and its predecessors also have used the trademark WHITE CAP continuously since February 1, 2004, in interstate commerce on non-metal building materials, namely, soffits, sewer and drain pipe of ceramic or earthenware or concrete or sandstone; deck drains of concrete or ceramic; bituminous waterproofing sheets; non-metal storm water pollution prevention products used as construction materials, namely storm water channels, erosion control jute mesh mats, silt fencing, drain filters, sand bags; non-metal concrete forming products, namely, panels, grout bags, rock texture mats, non-chemical concrete bond brakers, expansion board, curb and gutter felt, rebar caps, column forms, and form board ("the Goods"). White Cap owns United States Trademark Registration Nos. 3,026,843 and 3,048,812 in International Class 19 for the trademark WHITE CAP (stylized and not stylized formats) for the Goods in the '843 and '812 Registrations. (Exhibits C and D). Compl. ¶¶ 15, 16.

White Cap owns considerable goodwill in the WHITE CAP trademark for the Goods and the Services. The trademark is inherently distinctive, acquired secondary meaning and is famous. Compl. ¶ 18.

Todd Esrey, who is not a party, registered the domain name *whitecap.com* in 2004. Compl. ¶ 19. Esrey knew about White Cap and its WHITE CAP trademarks when he registered the *whitecap.com* domain name. Compl. ¶ 19. The *whitecap.com* domain name incorporates "white cap," a term that is identical or confusingly similar to White Cap's registered trademark. Compl. ¶ 19. Esrey knew that the domain name he registered was identical or confusingly similar to White Cap's trademarks, and Esrey willfully infringed White Cap's trademarks. Compl. ¶ 22.

White Cap demanded Esrey transfer the *whitecap.com* domain name to White Cap. Esrey admitted that he knew about White Cap, its business and its ownership of the WHITE CAP trademarks. Nevertheless, he still refused to transfer the *whitecap.com* domain name

to White Cap. Compl. ¶ 24. He also admitted that he knew that the *whitecap.com* domain name was valuable to White Cap and that White Cap would seek to obtain the domain name from him. Compl. ¶ 25.

After White Cap complained to Esrey and demanded that Esrey transfer the *whitecap.com* domain name to White Cap, the domain name was transferred to a fictitious entity, *oceanographical.com*. Compl. ¶ 26.

Persons entering *www.whitecap.com* on a web browser are redirected to a website of the United States government and a particular webpage about ocean conditions. That webpage had been otherwise available to the public through a United States Navy website at *https://www.fnmoc.navy.mil/CGI/ww3_loop.cgi?color=w&area=glo&prod=wcap_prbl*. The web site has views of ocean conditions. Compl. ¶ 27. However, counsel's Internet browser now reports a potential computer safety issue at that web address. Harris Decl. ¶ 3, Ex. E. The exhibit is the printout from the Firefox web browser.

Thus, persons who enter www.*whitecap.com* on their Internet browsers first are redirected to www.*oceanographical.com*. Although the browser continues to show www.*oceanographical.com* as the web address, it now displays what Exhibit E shows—a single page of an otherwise publicly available United States government website. In any event, the www.*whitecap.com* and www.*oceanographical.com* web sites display no other content and link to no third-party web sites. Compl. ¶ 27.

Esrey has a history of cybersquatting, using other persons' trademarks for his domain name. On October 29, 2004, Simpson Strong-Tie Company Inc. sued Esrey in the United States District Court for the Northern District of California because of Esrey's registration of the domain names *simpsonstrongtie.com, simpsonstrong-tie.com, strong-tie.com* and *strong-wall.com*. Even after Simpson Strong-Tie filed suit, Esrey would not transfer the domain names to Simpson Strong-Tie. Esrey failed to answer the complaint, defaulted and had a default judgment entered against him. The court awarded $30,468 in damages and attorney fees and ordered Esrey to transfer the domain names. Compl. ¶ 33. Exhibit F is a copy of the judgment.

Memorandum of Points and Authorities in Support of Motion for Default Judgment — 4

The "Whois" database lists all owners of all domain names. According to the "Whois" database, *whitecap.com* is registered to *oceanographical.com*, which allegedly is located at 3453 Ingraham St., Suite B, San Diego, CA 92109. According to the Google Maps website, First Class Mailboxes & Services is located at that address. Harris Decl. ¶ 5, Ex. G. It is not a physical business address.

The "Whois" database also says that the domain name registrar for *oceanographical.com* is AW Registry, Inc. However, a representative of AW Registry, Inc. provided White Cap's attorney with an agreement selling all web-hosting accounts for AW Registry, Inc. to TierraNet. Harris Decl. ¶ 6, Ex. H. Thus, TierraNet is the registrar for whitecap.com. Compl. ¶ 7.

No company has registered the fictitious name "*oceanographical.com*" with the San Diego County Clerk although any business operating in San Diego County under the name *oceanographical.com* is required to register the name with the county clerk. No company has registered a corporate name *oceanographical.com* with the California Secretary of State. Compl. ¶ 8. Consequently, White Cap could not obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1).

**D.   ARGUMENT**

    **1.   In Rem Jurisdiction is Proper**

This court has *in rem* jurisdiction under 15 U.S.C. § 1125(d)(2) over the domain name *whitecap.com* because its domain name registrar resides in this district. TierraNet's principal place of business is 14284 Danielson St., Poway, CA 92064, in this district. Compl. ¶ 5. White Cap could not obtain *in personam* jurisdiction over *oceanographical.com* because it has no physical address and is not registered with any government agencies.

Memorandum of Points and Authorities in Support of Motion for Default Judgment    5

## 2. The Court has the Power to Order TierraNet to Transfer the *whitecap.com* Domain Name to White Cap

The Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), provides that a court may order transfer of the domain name to the owner of the mark. *Id.* § 1125(d)(1)(C). The transfer is the only relief that White Cap requests.

## 3. The Statute Authorizes the Domain Name Transfer Based on *oceanographical.com*'s Acts and White Cap's Rights

White Cap showed Esrey/*oceanographical.com*'s liability under § 1125(d)(1)(A). White Cap demonstrated that Esrey/*oceanographical.com* registered *whitecap.com* in bad faith. That was admitted by failure to deny paragraph 30 of the complaint. Moreover, Esrey's acts show bad faith. He has no legitimate reason to hold onto the domain name. All it does is show a publically available Navy website.

Because this is a default in which there was no denial of the complaint's allegation of bad faith, White Cap submits that it is not required to go through the factors in § 1125(d)(1)(B)(i) that indicate bad faith. Nevertheless, the factors support bad faith.

1. "The trademark or other intellectual property rights of the person, if any, in the domain name." Esrey has none.

2. "The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person." Esrey's legal name is not "White Cap".

3. "The person's prior use, if any, of the domain name in connection with the *bona fide* offering of any goods or services." Esrey has not been in business offering goods or services.

4. "The person's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name." There is no fair use because the domain name only rolls over into a Navy site.

5. "The person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill rep-

resented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." There is no evidence that Esrey is trying to divert consumers. However, there is an implication that Esrey intends to tarnish the WHITE CAP mark in that a person entering *whitecap.com* and expecting to see plaintiff White Cap's web page now sees the domain name rolling over to the Navy site or sending a security warning to the person.

6. "The person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the *bona fide* offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct." No evidence.

7. "The person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct." *Oceanographical.com* is not registered with the San Diego County clerk, and the address it provided to its registrar is that of mailbox company.

8. "The person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties." Esrey's history with Simpson Strong-Tie Co. shows him acquiring domain names of that company.

9. "The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)." With 150 stores and a 30 year business history, the WHITE CAP mark is distinctive and famous.

The *whitecap.com* domain name is within the categories of § 1125(d)(1)(A)(ii). In particular, *whitecap.com* is practically identical to White Cap's registered trademark that was distinctive and famous when Esrey registered the domain name. Thus, plaintiff White Cap showed that Esrey/*oceanographical.com* is a cyberpirate within the terms of 15 U.S.C. § 1125(d).

## E. CONCLUSION

White Cap accordingly requests that the court grant its requested default judgment transferring the domain name *whitecap.com* to plaintiff White Cap.

June 20, 2008
        s/*Michael D. Harris/*
        Michael D. Harris (Calif. Bar. No. 59,470)
        Email: mharris@socalip.com
        Attorney for plaintiffs White Cap Construction Supply, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2008, I electronically filed the foregoing document using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a Notice of Electronic Filing of "Memorandum of Points and Authorities in Support of Motion to Enter Default Judgment by the Court [FED. R. CIV. P. 55(b)(2)]" to the following CM/ECF participant:

    J. Daniel Holsenback and Christopher C. Taylor
    Holsenback Taylor
    625 Broadway, Suite 906
    San Diego, CA 92101

June 20, 2008
        s/ *Michael D. Harris/*
        Michael D. Harris.

## EXHIBIT A – 15 U.S.C. § 1125(d)

(d) Cyberpiracy prevention

(1)

    (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

        (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

        (ii) registers, traffics in, or uses a domain name that—

            (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

            (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

            (III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

    (B)

        (i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—

            (I) the trademark or other intellectual property rights of the person, if any, in the domain name;

            (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

            (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

            (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

            (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

            (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering

---

Memorandum of Points and Authorities in Support of Motion for Default Judgment    9

of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

(ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

(C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

(D) A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

(E) As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

(2)

(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—

(i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and

(ii) the court finds that the owner—

(I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

    (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—

      (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

      (bb) publishing notice of the action as the court may direct promptly after filing the action.

  (B) The actions under subparagraph (A)(ii) shall constitute service of process.

  (C) In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which—

    (i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or

    (ii) documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

  (D)

    (i) The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall—

      (I) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

      (II) not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

    (ii) The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

(3) The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

(4) The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.